IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-00707-MSK-CBS

AUDREY L. TENNYSON,

   Plaintiff,

v.

RICK RAEMISCH, CDOC Director; and
DOUG ROBERTS, CDOC-PPMU Medical Monitor,

   Defendants.

**OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court on Defendants Rick Raemisch and Doug Roberts's (collectively, the "CDOC Officials") Motion for Summary Judgment (**#102**), and Mr. Tennyson's[1] Response (**#116**); and Mr. Tennyson's Motion for Partial Summary Judgment (**#105**), and the CDOC Officials' Response (**#122**).

**I.    Jurisdiction**

Mr. Tennyson's lawsuit currently asserts at least two claims for prospective injunctive relief pursuant to 42 U.S.C. § 1983 against the CDOC Officials. Mr. Tennyson claims that the CDOC Officials have and are improperly denying him (i) Zantac (a medication used to treat gastro-intestinal reflux disease ("GERD")) and (ii)

---

[1]    Mr. Tennyson is proceeding as a *pro se* plaintiff. In such cases, the Court will construe *pro se* pleadings and other filings liberally and will not hold them to the same stringent standards applied to pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

1

refusing to supply him with adequate personal hygiene supplies making him purchase those items from the prison canteen when he does not have sufficient funds to do so. Both acts, Mr. Tennyson claims, violate his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the U.S. Constitution. The parties dispute whether Mr. Tennyson currently is asserting First and Fourteenth Amendment claims; the CDOC Officials say that all of his claims other than the Eighth Amendment ones were dismissed or otherwise resolved earlier in the litigation, but Mr. Tennyson insists that the First and Fourth Amendment claims remain active. In any event, Mr. Tennyson seeks a court order requiring the CDOC Officials to provide him with the Zantac and hygiene supplies, regardless of whether he can afford to pay for them. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

## II. Factual Background

This case involves cross-motions for summary judgment. Where the question of whether there is a genuine dispute as to a material factual issue turns upon which party has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated separately. *In re Ribozyme Pharms., Inc., Sec. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). That complicates matters somewhat in this case, because for the purposes of each summary judgment motion, the facts must be viewed in the light most favorable to the non-movant.

Therefore, in the interest of efficiency, the Court summarizes the material facts relevant to the CDOC Officials' motion, which are viewed in the light most favorable to

Mr. Tennyson. If it becomes necessary to construe any facts differently (*i.e.*, in the light most favorable to the CDOC Officials) when resolving Mr. Tennyson's Motion for Partial Summary Judgment, the court will identify those re-construed facts in its discussion of the issues being raised by that motion.

Mr. Tennyson is an inmate within the Colorado Department of Corrections ("CDOC"). He currently is incarcerated at Crowley County Correctional Facility ("CCCF") in Olney Springs, Colorado. Mr. Tennyson's first claim challenges the practice of CDOC and/or CCCF of requiring inmates to use their own personal funds to purchase over-the-counter "personal comfort" medications except where (a) a medication is deemed to be "medically necessary" by a health care professional, and (b) the inmate cannot afford that medication. This requirement is reflected in CDOC administrative regulation AR 700-15(IV)(D)(2).

Mr. Tennyson asserts[2] that since 2015 he has been unable to afford Zantac to treat his GERD, which was diagnosed twenty years ago, and that the CCCF medical staff (specifically, Dr. Louis Cabiling, Mr. Tennyson's physician at CCCF) will not designate it as medically necessary. His inability to afford Zantac results from the fact that his inmate canteen account has a negative balance, and that negative balance is the result of costs associated with his court-ordered restitution payments and his frequent litigation costs for filing fees, paper, pens, postage, *etc.* After payment of such costs, Mr.

---

[2] Mr. Tennyson did not support his own motion, nor his response to the Defendants' motion, with a formal affidavit or declaration, as required by Fed. R. Civ. P. 56(c)(1)(A). Nevertheless, his filings do contain assertions of fact that appear to be made upon his personal knowledge. Because Mr. Tennyson's papers are construed liberally as an unrepresented party, and because he presumably could (and would, if required) reduce facts of which he has personal knowledge to a sworn affidavit, the Court will consider clearly factual statements within the scope of Mr. Tennyson's personal knowledge as if they were properly asserted through an affidavit as required by Rule 56.

Tennyson has only approximately $1.90 per month credited to his account, which is insufficient to allow him to purchase a month-long supply of Zantac at a cost of $12.50.[3]

According to Mr. Tennyson, CCCF medical staff acted in bad faith when refusing to designate that Zantac was medically necessary. Although he has GERD, Mr. Tennyson states that he was not examined or "re-diagnosed" to determine whether his initial diagnosis and prescription should be changed. Rather, according to Mr. Tennyson, CCCF and/or CDOC simply decided that over-the-counter GERD treatments (like Zantac) would no longer be provided through CCCF's clinical services – at least to him – and inmates would be required to purchase those sorts of medications themselves. Mr. Tennyson acknowledges that the CCCF medical staff prescribed and he receives a special diet to address his GERD symptoms, and that the diet helps his symptoms. He remains firm, however, that the diet is not as effective as Zantac is.

Mr. Tennyson also states that he suffers from concrete injuries as a result of not having Zantac. He says that, absent Zantac, he suffers from chronic and severe pain, is unable to sleep at night and often wakes in pain, he belches acid that burns his nostrils, and his GERD causes him to "near-vomit." He also says that when Dr. Cabiling informed him that he would need to begin obtaining Zantac through the prison canteen, he told Dr. Cabling that he could not afford it and would experience severe pain, but Dr. Cabling did not change his stance. Finally, Mr. Tennyson refers to a potential consequence of untreated GERD – the development of "Barrett's Esophagus," which he says can be a precursor to esophageal cancer.

---

[3] The CDOC Officials note that on May 17, 2016, Mr. Tennyson received a deposit of $2,500, which consisted of proceeds from a settlement. Mr. Tennyson apparently used the money – in part – to purchase Zantac and hygiene supplies, but that sum has been completely consumed, and Mr. Tennyson's inmate account balance is again negative.

4

Mr. Tennyson's second claim is that due to his negative trust account balance, he cannot afford various hygiene products (soap, razors, *etc.*). Although, as discussed herein, the facts of this claim have changed somewhat, as of the time of briefing on the summary judgment motions, Mr. Tennyson conceded that that he was allowed to purchase one hygiene kit per month on credit despite his negative balance, but he contended that such a single kit – consisting of one three ounce bar of soap,[4] one four ounce shampoo bottle, one small deodorant, one comb, one 0.85 ounce toothpaste tube, and one miniature toothbrush – was only sufficient to last him six days. Mr. Tennyson says that in order to conserve his soap and shampoo, he is only able to shower using them every third day or so.[5]

Mr. Tennyson states that because of his inadequate access to hygiene supplies, specifically including soap, his preexisting eczema condition has been aggravated, resulting in a skin irritation and itching severe enough that he scratched it to the point of bleeding. He also says that the lack of sufficient hygiene products causes him to develop a bad body odor, which in turn puts him at risk of inmate-on-inmate violence from other inmates who are offended by how he smells.

### III. Standard of Review

---

[4]  A three ounce bar of soap is apparently relatively small, but still a full-sized bar; it is not travel- or amenity-sized.

[5]  On September 1, 2017, the Magistrate Judge granted in part **(# 134)** Mr. Tennyson's motion to supplement his Complaint to address significant events that have occurred with respect to his hygiene product claim since the filing of this lawsuit. Mr. Tennyson then filed a Supplemental Complaint **(# 135)**, which is awaiting the CDOC Officials' filing of a response. As noted below, the instant Opinion does not consider the contents or significance of the Supplemental Complaint.

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court in considering a Motion for Summary Judgment or a Motion for Partial Summary Judgment is: is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive law, it is an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational trier of fact to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof. Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). As to the evidence offered during summary judgment, the Court views it the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts – when the movant has the burden of proof and when the non-movant has the burden of proof. Each context is handled differently. When the movant has the burden of proof, the movant

6

must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the movant does not have the burden of proof. In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the respondent cannot make a *prima facie* showing; that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, 809 F.3d at 1137. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary judgment may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

IV. Analysis

    A. **The CDOC Officials' Summary Judgment Motion as to Mr. Tennyson's Eighth Amendment Claims**[6]

---

[6] As a threshold matter, there seems to be some dispute as to whether Mr. Tennyson is bringing First and Fourteenth Amendment claims that survived the dismissal stage of the litigation. The CDOC Officials believe that only his Eighth Amendment claims are still actionable; Mr. Tennyson disagrees. This Court's own review of the docket reveals that the question is not a straightforward one. *See* Docket # 68 at 16-17 (acknowledging

7

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. That prohibition on cruel and unusual punishment is implicated in this case in two different ways. First, it prohibits prison officials from acting with deliberate indifference towards an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 102-05 (1976). This analysis applies to Mr. Tennyson's claim that CDOC is improperly requiring him to purchase Zantac from the prison canteen and not providing it to him free-of-charge.[7]

Second, the prohibition requires that prison officials maintain "humane conditions of confinement." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). This analysis applies to Mr. Tennyson's claim that CCCF and/or the CDOC Officials are providing him with an inadequate amount of hygiene supplies. Those analyses follow in turn.

1. **Zantac**

For a *prima facie* claim for deliberate indifference, Mr. Tennyson must come forward with proof that establishes both objective and subjective indifference to an his

---

First and Fourteenth Amendment claims) and 44-45 (dismissing claims without specifying the claims being dismissed).

Because the issue of whether Mr. Tennyson has surviving claims other than his Eighth Amendment claims has not been briefed and thus is not before the Court, the Court does not intend to rule on that question at this time. The Court emphasizes that this Opinion only resolves the CDOC Officials' challenge to Mr. Tennyson's Eighth Amendment claims.

[7] The CDOC Officials' couch their summary judgment argument as to Mr. Tennyson's Zantac-related claim as a "conditions of confinement" one. However, a close read of Mr. Tennyson's Complaint and other filings in the case (including his Motion for Partial Summary Judgment and his opposition to the CDOC Officials' Motion for Summary Judgment) strongly suggests that his Zantac-related claim is more properly considered to be one for deliberate indifference to his serious medical needs, and not one challenging his conditions of confinement.

serious medical need. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Objective indifference requires a showing of a medical need that is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A sufficient serious medical need has been diagnosed by a physician and requires treatment or is so obvious that even a lay person would easily recognize the need for medical attention. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Swan v. Physician Health Partners, Inc.*, 212 F. Supp. 3d 1000, 1006 (D. Colo. 2016). Subjective indifference requires evidence that the prison official is aware of the serious medical need but is indifferent to, or disregards, it. *Sealock*, 218 F.3d at 1209.

The Court will assume, without deciding, that Mr. Tennyson's GERD constitutes a sufficiently serious medical need. In *Tennyson v. Raemisch*, 638 Fed. App'x 685, 689 (10th Cir. 2015), a decision by the Tenth Circuit rendered earlier in this case, the Circuit suggested that GERD could, at least potentially, constitute such a serious medical need. Moreover, the record reflects that Mr. Tennyson has previously been diagnosed as suffering from the condition to a degree that he has been placed on a special diet as a form of treatment for it. Construing the evidence presented most favorably to him, Mr. Tennyson suffers extensive pain when his GERD is not treated, which (he says) impacts his sleeping and arguably his future health. In addition, other courts have found GERD to constitute a sufficiently serious medical need.[8] Accordingly, the Court assume that

---

[8] *See Bussiere v. Kokor*, No. 113-CV-01565AWISKO, 2017 WL 840665, at *7 (E.D. Cal. Mar. 2, 2017) (cataloguing cases). *Also, Bell v. Jendell*, 980 F. Supp. 2d 555, 560 (S.D.N.Y. 2013); *Lane v. Corizon Healthcare*, No. 3:13-CV-519 JD, 2013 WL 5348489, at *2 (N.D. Ind. Sept. 23, 2013). Other cases disagree, at least on a case-by-case basis. *See: e.g. Watson-El v. Wilson*, No. 08 C 7036, 2010 WL 3732127, at *13-14 (N.D. Ill. Sept. 15, 2010); *Fox v. Rodgers*, Civil Action No. 08-CV-14727, at *2 (E.D. Mich. June 8, 2010).

Mr. Tennyson has adequately established the objective component of a deliberate indifference claim.

He nonetheless has not come forward with evidence sufficient to demonstrate subjective indifference to it by any CDOC official. There is no dispute that CDOC Officials were aware that Mr. Tennyson was suffering from GERD, and this is not an instance where the CCCF medical staff has left his condition untreated. To the contrary, Mr. Tennyson's treatment notes specifically state that the CCCF medical staff put him on the special diet intended to address his GERD, and that the order for that diet specifically was renewed by Dr. Cabiling in July 2016. Dr. Cabiling was specifically aware that Mr. Tennyson believed that Zantac was also necessary to control his GERD symptoms but, the Court infers, Dr. Cabiling did not agree.

To be sure, Mr. Tennyson disagrees with the treatment ordered by Dr. Cabiling and the CCCF medical staff. Mr. Tennyson states that "the diet merely helps minimize an over-stimul[ation] of gast[r]ic acids, but doesn't block them altogether as does Zantac." But disagreement with prescribed treatment is not enough to establish subjective indifference. For the purposes of the Eighth Amendment analysis, it is not enough that an inmate simply disagrees with the medical treatment or medication that was ordered or prescribed to him or her. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *Sherman v. Klenke*, 653 Fed. App'x 580, 586 (10th Cir. 2016). The Tenth Circuit has explained this principle at length:

> As for [the inmate's] allegations concerning [the prison doctor], the district court correctly observed that some allegations indicate not a lack of medical treatment, but a disagreement with [the prison doctor's] medical judgment in treating a condition with certain medications rather than others. For example, [the inmate] alleges that he was not given the medications he desired for his headaches; but he admits being given other

10

> medications, so his complaint amounts to merely a disagreement with [the prison doctor's] medical judgment concerning the most appropriate treatment. An Eighth Amendment violation requires both a sufficiently serious medical need and deliberate indifference by the health-care provider. Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.

*Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

In short, inmates only are entitled to medical care that is reasonably designed to meet their routine and emergency health care needs. *Sherman*, 653 Fed. App'x at 587; *Chandler v. Rodriguez*, 74 Fed. App'x 1, 3 (10th Cir. 2003); *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996). Here, there is no dispute that Dr. Cabiling and the CCCF medical staff acknowledged Mr. Tennyson's GERD diagnosis, ordered a facially-reasonable treatment (a special diet) in response to that condition, and monitored the condition on a periodic basis. That is all that is required by the Eighth Amendment.

Mr. Tennyson's contention that he has inadequate funds in his account to purchase Zantac does not change this analysis. The CDOC officials have not precluded him from purchasing Zantac – his treatment of choice. Rather, Mr. Tennyson has the choice as to how to allocate and prioritize the spending of his limited funds, and he has decided to prioritize other expenditures over the additional comfort that Zantac would bring. That dilemma, although unfortunate, is one that many individuals, incarcerated or not, struggle with, and it is one for which the 8th Amendment provides no relief. Summary judgment in the CDOC Officials' favor on Mr. Tennyson's Zantac-related claim is warranted accordingly.

   **2. Hygiene Products**

Mr. Tennyson's second claim is that that the CDOC Officials are imposing unreasonable conditions of confinement by failing to provide him with an adequate supply of hygiene products in a timely fashion.

As a matter of law, deprivation of hygiene products gives rise to a conditions of confinement claim only if the deprivation results in a concrete or tangible harm. *See Whittington v. Ortiz*, 472 F.3d 804, 808 (10th Cir. 2007); *see also Scott v. Case Manager Owens (SCF)*, 80 Fed. App'x 640, 643 (10th Cir. 2003). The mere fact that an inmate lacks hygiene items is not enough, and the inmate must show that this deprivation caused a specific harm or injury.

Construing the evidence most favorably to Mr. Tennyson, the only product he identifies the deprivation of which actually causes him a concrete harm is soap.[9] He states that this aggravates his eczema and allows an offensive body odor which may make him a target of other inmates.

For a *prima facie* Eighth Amendment claim, Mr. Tennyson must again satisfy a two-component, objective/subjective test. First, he must come forward with sufficient evidence to establish an objective need - that he was deprived of the "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Second, he must show that CDOC officials subjectively acted with "deliberate indifference" to this objective need – that is, that they were aware of the deprivation of life's necessities but failed to take reasonable measures to abate it. *Id*. at 834, 847.

---

[9] Mr. Tennyson has pointed to no evidence showing how the purported deprivation of any other hygiene products (shampoo, razors, *etc.*) causes him a specific, tangible injury.

Furthermore, an important factor in determining whether conditions of confinement meet constitutional standards is the duration of the objectionable conditions. *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). Courts are clear that "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation." *Bainum v. Sedgwick Cnty. Comm'rs*, No. 01–3207, 27 Fed. App'x 965, 969 (10th Cir. 2001) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001)).

Mr. Tennyson concedes that he has been able to purchase soap as part of a hygiene kit that he buys on credit,[10] but his complaint is that the soap does not last him long enough (approximately 30 days between the time between delivery of one kit and the next). Specifically, he explains his situation as follows:

> Mr. Tennyson was forced, for an excess of 24 months, to try and make the six-day [hygienic] supply in the monthly-limited hygiene kit last for the whole month. As a result, Mr. Tennyson could not shower every day in order to conserve his one 3 [ounce] soap bar and 4 [ounce] shampoo, so they'd last until the following month.
> …
> Although Mr. Tennyson had access to shower facilities as often as he liked, the fact that he could not use soap more than about every third day in order to make his six-day soap supply to last a month, and that was for over 24-months [sic] under this condition – his constitutional rights were violated.

(**#116**, pp. 34-35.)

In other words, based on Mr. Tennyson's own account, being limited to only one purchased-on-credit hygiene kit per month effectively means that he can only use soap to

---

[10] The Court again acknowledges that Mr. Tennyson's Motion to Supplement was granted on September 1, 2017, and that Mr. Tennyson has since filed a Supplemental Complaint (**# 135**) that contains somewhat different factual allegations on this point. Because the Court is constrained, in the instant analysis, to the matters that were addressed in the briefing, this Opinion considers and addresses the hygiene claim only to the extent it existed prior to Mr. Tennyson's supplemental filing. The Court expresses no opinion here as to whether or to what extent Mr. Tennyson's new hygiene allegations in the Supplemental Complaint would or would not support a different iteration of the hygiene claim.

shower once every third day or so (*i.e.*, two or three times a week), even though he can otherwise shower daily.

A number of courts – including the Tenth Circuit – have held that prisons may not deprive inmates of basic hygiene products for substantial periods of time, even when those prisoners cannot afford to purchase the products on their own, and even where the reason for that unaffordability is that the prisoner spent his or her funds on litigation expenses. *See, e.g., Whitington v. Ortiz*, 307 Fed. App'x 179, 188-89 (10th Cir. 2009); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *but see Scott*, 80 Fed. App'x at 643. However, where the prison offers such inmates the ability to receive hygiene supplies for free (or, by extension, on credit) on an indigent basis, any Eighth Amendment concerns normally will be ameliorated. *See Sellers v. Worholtz*, 86 Fed. App'x 398, 400 (10th Cir. 2004). Furthermore, an inmate need only be provided with a reasonable or sufficient amount of hygiene products; an occasional deprivation, or the provision of only a limited quantity of these basic hygiene provisions is insufficient to state a conditions of confinement claim." *Bryant v. Lanigan*, No. CV 15-3205 (JLL), 2016 WL 164998, at *4 (D.N.J. Jan. 14, 2016) ; *Lee v. Ross*, No. 4:13-CV-4125, 2014 WL 585259, at *2 (W.D. Ark. Feb. 14, 2014).

Mr. Tennyson's situation differs from that in which a prisoner receives <u>no</u> hygiene supplies. He has daily access to showers, and his soap is sufficient to allow use every third day or so. Numerous other courts have held that deprivations of hygiene products over a longer – sometimes significantly longer – period are insufficient to serve as the basis for a conditions of confinement claim. *See Davison v. Stout*, 44 Fed. App'x 404, 405 (10th Cir. 2002) (three day soap deprivation not violation); *Harris v. Fleming*,

14

839 F.2d 1232, 1234 (7th Cir. 1988) (ten day soap deprivation not violation); *Wallin v. Alfaro*, No. 03-CV-00281-WDM-MJW, 2005 WL 2125224, at *8 (D. Colo., Sept. 2, 2005) (thirteen day soap deprivation not violation). This Court agrees.[11] Mr. Tennyson has not met the objective component of the conditions of confinement analysis for lack of sufficient soap.

Although the Court need not move on to the subjective element of this claim, it does so briefly for the purpose of completeness. It is not enough for Mr. Tennyson to establish that the official should have known of the risk of harm that could result from the challenged conditions. *Pollard v. Soares*, No. 09-CV-00106-REB-KLM, 2010 WL 582370, at *12 (D. Colo. Feb. 18, 2010) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). "Instead, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 838).

Here, the evidence clearly shows that at least some CCCF staff members – and at least one of the CDOC Officials – were aware that Mr. Tennyson believed that he was receiving an insufficient hygiene products. However, there is no indication that they were ever made aware of Mr. Tennyson's specific claimed injuries resulting from that

---

[11] The the general consensus among the various courts seems to be that limiting inmates to a single shower every two to three days will not constitute an Eighth Amendment conditions of confinement violation. *See, e.g., Juda v. Hamilton*, 229 F.3d 1163, 2000 WL 1187700, at *1 (10th Cir. 2000) (unpublished, table) (three showers per week permissible); *Dorrough v. Hogan*, 563 F.2d 1259, 1262 (5th Cir. 1977) (two showers per week permissible); *Planker v. Christie*, No. CIV.A. 13-4464 MAS, 2015 WL 268847, at *23 (D.N.J. Jan. 21, 2015) (one shower every three days permissible). If CCCF could constitutionally limit Mr. Tennyson's access to showers to one every three days <u>with</u> soap, then a shower every three days with soap plus additional daily showers <u>without</u> soap would be constitutionally sufficient.

deprivation (*i.e.*, aggravated eczema and bad body odor).  Mr. Tennyson has not put forward any medical records suggesting that this is the case, nor has he shown that he ever lodged a formal complaint explaining the consequences of the limited amount of soap made available to him on credit.[12]

Because Mr. Tennyson has failed to come forward with sufficient evidence to establish both objective and subjective indifference with regard to lack of adequate soap, summary judgment is warranted on this claim.

Accordingly, the Court **GRANTS** the CDOC Officials' Motion for Summary Judgment.  Summary Judgment is granted with respect to both of Mr. Tennyson's Eighth Amendment claims.

### B. Mr. Tennyson's Motion for Partial Summary Judgment

Mr. Tennyson only moves for summary judgment on his Eighth Amendment Zantac-related claim.[13]  Because the Court grants summary judgment to the Defendants

---

[12]  Indeed, the only "evidence" in the record concerning the CDOC Officials' knowledge of those injuries is Mr. Tennyson's cursory statement that "[the CDOC Officials] are aware that Mr. Tennyson has faced these conditions for years."  It is not clear what "these conditions" are – *i.e.*, whether Mr. Tennyson is speaking of his eczema and body odor, or his complaints about inadequate soap, or some other circumstances.  But even if he is referring specifically to his eczema being aggravated by a lack of soap, he does not indicate *which* CDOC officials were aware of his eczema, *how* they learned of the connection between that condition and a lack of soap, or *whether* the particular official had the authority to provide him with additional soap.  Conclusory allegations do not fulfill a nonmovant's obligation to make a *prima facie* showing necessary to defeat a motion for summary judgment.  *Oryem v. Richardson*, 499 Fed. App'x 778, 781 (10th Cir. 2012).

[13]  Mr. Tennyson also briefly alludes to a request for declaratory relief in a single, one-page count of his Motion for Summary Judgment.  In the corresponding abbreviated discussion, he does vaguely mention some issues that, broadly construed, might go to the First and Fourth Amendment claims he purports to bring.  However, when setting forth the "elements" of this purported claim (as required by the Court's practice standards), Mr. Tennyson states:  "Because the issues are so multifaceted and layered, however

on that claim, the Court need not address Mr. Tennyson's motion for summary judgment. The allegations and evidence set forth in that motion would not materially alter the analysis set forth herein.

III. **Conclusion**

The Court hereby orders as follows. The CDOC Officials' Motion for Summary Judgment (**#102**) is **GRANTED**. Mr. Tennyson's Motion for Partial Summary Judgment (**#105**) is **DENIED**. The Court directs that the parties jointly contact the Magistrate Judge to set a continued Fed. R. Civ. P. 16 conference to address: (i) whether any claims remain in this case, (ii) whether any further pretrial proceedings or dispositive motion practice is warranted as to any remaining claims, and (iii) if claims remain but no further pretrial proceedings are warranted, to direct the parties to contact the undersigned's chambers to schedule a Pretrial Conference.

Dated this 14th day of September, 2017.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

---

believed by Mr. Tennyson to be unconstitutional at least in their totality, and possibly invidiously d[i]scrimnatory against him due to his l[i]tigiousness – *Mr. Tennyson asks that these remaining facts be set for trial before a jury*." (**#105**, at p. 27 (emphasis added).) Even construed liberally, this can only be taken as an admission by Mr. Tennyson that the facts relevant to his declaratory judgment claim at issue in his motion are disputed and must be resolved at trial.